IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JONAH JILLSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:19-cv-00394 |
| v. ) | |
| ) | JUDGE RICHARDSON |
| OSHI MEDLIN, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiff Jonah Jillson, an inmate currently confined at Hardeman County Correctional Facility, filed this *pro se* civil rights action under 42 U.S.C. § 1983 regarding his medical treatment at Trousdale Turner Correctional Center ("TTCC" or "Trousdale Turner"), his previous place of confinement. (Doc. No. 1 at 2–3.) He brings this action against twelve defendants: Oshi Medlin, the TTCC Health Services Administrator; Nurse Practitioner Cobb; Nurses Clark, Murray, Carter, and Peterson; "John Doe Nurse"; two "Jane Doe Nurses"; "John Doe"; and two "John Doe Physicians." (*Id.* at 1, 3.) Plaintiff also filed an application to proceed in this Court without prepaying fees and costs (Doc. No. 8) and a motion to appoint counsel (Doc. No. 2). For the following reasons, Plaintiff will be appointed counsel and this action will be referred to the Magistrate Judge for further proceedings.

**I.   Application to Proceed as a Pauper**

The Court may authorize a prisoner to file a civil suit without prepaying the filing fee. 28 U.S.C. § 1915(a). Because it appears from Plaintiff's *in forma pauperis* application that he cannot pay the full filing fee in advance, his application (Doc. No. 8) will be granted. The $350.00 filing fee will be assessed as directed in the accompanying Order. 28 U.S.C. § 1915(b)(1).

**II.     Initial Review**

Under the screening requirements of the Prison Litigation Reform Act ("PLRA"), the Court must conduct an initial review and dismiss the complaint if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915A, 1915(e)(2)(B); 42 U.S.C. § 1997e(c)(1). The Court must also construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)).

**A.     Factual Allegations**

Plaintiff alleges that he arrived at Trousdale Turner on April 2, 2018. (Doc. No. 1 at 4.) During a medical screening at intake that day, Plaintiff advised that he had a prescription to take 500 mg of Kepra, an anti-seizure medication, twice a day. (*Id.*) Around 1:00 p.m. on April 2, Plaintiff was taken to Building A, Pod C, Cell 116. (*Id.*) During pill call that evening, Plaintiff told a female nurse that he needed his medication, but he did not receive it. (*Id.*)

During morning pill call on April 3, Plaintiff again advised a nurse that he needed his anti-seizure medication and explained that he was "prone to suffer seizures without it," but he did not receive the medication. (*Id.*) Plaintiff started feeling unwell during the day on April 3, and again advised a nurse during evening pill call that he needed his medication. (*Id.*) He did not receive it, so Plaintiff asked the nurse to "contact the provider to verify that he in fact did have a prescription for anti-seizure medication." (*Id.*) He advised the nurse that he would "definitely suffer from seizures" if he did not receive the medication. (*Id.*) The nurse did not return to his cell. (*Id.*) Plaintiff then expressed his concerns about not receiving his anti-seizure medication to an on-duty

officer and requested that the officer contact medical, but the officer refused, stating that Plaintiff "did not have a medical emergency." (*Id.*)

From April 4 through April 13, Plaintiff suffered either one or two seizures every day, except for April 8. (*Id.* at 5–6.) Plaintiff provides the following details of this time period:

- April 4: one seizure; informed officer and two nurses of seizure at morning pill call; did not receive medication; request to go to medical denied.

- April 5: one seizure; did not receive medication; not taken to medical.

- April 6: two seizures; informed officer and nurse of pain in head and body; did not receive medication; request to go to medical denied.

- April 7: one seizure; did not receive medication; "[n]o medical code was called."

- April 8: felt pain in head and body as a result of not receiving medication.

- April 9: one seizure; did not receive medication.

- April 10: two seizures; did not receive medication; informed nurse at morning pill call of not receiving medication, despite following TTCC sick call procedures and asking staff; explained to nurse that he had been taking prescribed dosage of Kepra "for a long time"; medical staff told Plaintiff "that the provider for TTCC medical has to get lab work done so that [he] can be given anti-seizure medication."

- April 11: two seizures; did not receive medication.

- April 12: two seizures; felt "great pain," including in joints, muscles, back, and head; informed nurse that he urinated on himself; request to go to medical denied.

- April 13: two seizures; did not receive medication initially, but eventually got it.

(*Id.*)

After Plaintiff received his anti-seizure medication on April 13, he requested to see the doctor. (*Id.* at 6.) Plaintiff noticed short-term memory problems that day. (*Id.*) Finally, on April 15, a doctor told Plaintiff that the seizures resulted in a brain injury. (*Id.*) Plaintiff alleges that the seizures impaired his memory, decision making, cognitive function, and fine motor skills. (*Id.*) He "cannot use his arms or hands as he once did" and requires physical therapy. (*Id.*) He also "need[s]

3

to be seen by a neurologist." (*Id.*) It is likely, Plaintiff alleges, that he will be impacted by the effects of the seizures for the rest of his life. (*Id.*) Plaintiff requests monetary damages and any other relief to which he may be entitled. (*Id.* at 7.)

### B. Standard of Review

To determine whether a prisoner's complaint "fails to state a claim on which relief may be granted" under the PLRA, the Court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The Court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). An assumption of truth does not, however, extend to allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A *pro se* pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### C. Discussion

"To prevail on a cause of action under § 1983, a plaintiff must prove '(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).

#### 1. Statute of Limitations

As an initial matter, the Court notes that there is a one-year statute of limitations for Section 1983 claims in Tennessee. *Mills v. Barnard*, 869 F.3d 473, 484 (6th Cir. 2017) (citing Tenn. Code

4

Ann. § 28-3-104(a)). "[T]he accrual date of a [Section] 1983 cause of action is a question of federal law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). The "standard rule" is that "the statute of limitations period begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *Harrison v. Michigan*, 722 F.3d 768, 772–73 (6th Cir. 2013) (quoting *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996)). A prisoner's civil complaint is deemed filed when it is submitted to prison officials for mailing. *Richard v. Ray*, 290 F.3d 810, 813 (6th Cir. 2002). Here, it appears that Plaintiff submitted the complaint for mailing on May 7, 2019.[1] (Doc. No. 2 at 6.) Thus, Plaintiff's claims may be untimely if they are based on acts that he knew or had reason to know occurred prior to May 7, 2018.

The alleged events that form the basis of Plaintiff's claims occurred at Trousdale Turner from April 2 through April 13, 2018. At this early stage of the proceedings, however, the Court will not dismiss Plaintiff's claims as untimely. The statute of limitations is an affirmative defense. *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012) (citing Fed. R. Civ. P. 8(c)). "As such, Defendants [bear] the ultimate burden of proof on that issue." *Id.* (citing *Fonseca v. Consol. Rail Corp.*, 246 F.3d 585, 590 (6th Cir. 2001)). And "[t]he statute of limitations for claims subject to the PLRA is tolled while the plaintiff exhausts his required administrative remedies." *Id.* (citing *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000)).

Here, Plaintiff alleges that he filed a grievance regarding the deprivation of his anti-seizure medication, and that he appealed it "as far as [he] could, to the commissioner." (Doc. No. 1 at 2.) He also alleges that the grievance was denied at every level, (*id.*), but does not explain how long this process took. Accordingly, the complaint does not contain sufficient information to determine

---

[1] Plaintiff submitted the complaint and his motion to appoint counsel in the same envelope. (Doc. No. 1 at 8.) While the complaint is dated May 2, 2019, (Doc. No. 1 at 7), Plaintiff signed a certificate of service reflecting that he gave the motion to appoint counsel to prison officials for mailing on May 7, (Doc. No. 2 at 6). Because the complaint was in the same envelope, the Court infers that Plaintiff gave it to prison officials for mailing that same day.

whether Plaintiff's claims are untimely after tolling for the period during which he allegedly exhausted his administrative remedies.

### 2. Capacity of Defendants

Before turning to the merits of Plaintiff's claims, the Court must address one more procedural issue. Plaintiff lists twelve individuals as defendants but does not affirmatively plead whether they are named in their official capacities, individual capacities, or both. (Doc. No. 1 at 3.) Where a Section 1983 plaintiff does not specify the capacity in which he is suing the defendants, the Court assumes that they are being sued in their official capacities. *Moore v. City of Harriman*, 272 F.3d 769, 771 (6th Cir. 2001) (citing *Whittington v. Milby*, 928 F.2d 188, 193 (6th Cir. 1991)). But "a plaintiff's failure to explicitly state 'individual capacity' in the complaint is not necessarily fatal to" individual-capacity claims. *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003). In the Sixth Circuit, "[i]f 'a [Section] 1983 plaintiff fails to affirmatively plead capacity in the complaint, we then look to the course of proceedings to determine whether' the defendants received sufficient notice that they might be held individually liable." *Goodwin v. Summit Cty.*, 703 F. App'x 379, 382 (6th Cir. 2017) (quoting *Moore*, 272 F.3d at 771).

Here, Plaintiff at least partially identifies six defendants by name, and lists six additional unidentified defendants—one "John Doe," one "John Doe Nurse," two "Jane Doe Nurses," and two "John Doe Physicians." (Doc. No. 1 at 1, 3.) He does not reference any defendant's official title in the caption of the complaint. (*Id.* at 1.) He also seeks compensatory and punitive damages "jointly and severally." (*Id.* at 7.) These details support a finding that the complaint provides sufficient notice that the defendants are being sued as individuals. *Moore*, 272 F.3d at 773. And "[t]o the extent doubt persists that this combination of factors warrants construing the complaint as one against the defendants individually, this doubt should be resolved in [Jillson's] favor as a

*pro se* plaintiff." *Lindsay v. Bogle*, 92 F. App'x 165, 169 (6th Cir. 2004) (citing *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999)). Accordingly, the Court will consider Plaintiff's claims against the defendants in both their official and individual capacities. *See Rodgers*, 344 F.3d at 594–95 (applying the course-of-proceedings test to hold that a defendant explicitly sued in her official capacity "was on notice that she was [also] being sued in her individual capacity").

### 3. Individual-Capacity Claims

Plaintiff alleges that he arrived at Trousdale Turner on April 2, 2018, and did not receive his prescribed anti-seizure medication until April 13. During this period, Plaintiff alleges, he suffered numerous seizures and several TTCC staff members either ignored his deteriorating condition or refused his requests for medical treatment.

The Eighth Amendment imposes a duty on prison officials to provide adequate medical care to convicted prisoners.[2] *Shadrick v. Hopkins Cty.*, 805 F.3d 724, 736–37 (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "[A] prisoner's Eighth Amendment right is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs." *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (citing *Estelle*, 429 U.S. at 104). "A constitutional claim for deliberate indifference contains both an objective and a subjective component. The objective component requires a plaintiff to show the existence of a 'sufficiently serious' medical need." *Dominguez*, 555 F.3d at 550 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Here, Plaintiff satisfies the objective component in two ways.

First, Plaintiff allegedly had a serious medical need for his anti-seizure medication from the time he arrived at TTCC on April 2, 2018. "A serious medical need is 'one that has been

---

[2] Plaintiff does not state whether he was a pretrial detainee or a convicted prisoner at the time of the allegations, but this distinction has no practical effect on the Court's analysis because the Sixth Circuit applies the same standard to claims of inadequate medical care brought by pretrial detainees and convicted prisoners. *Hopper v. Plummer*, 887 F.3d 744, 756 (6th Cir. 2018) (citing *Villegas v. Metro Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)).

diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004)). On April 2, Plaintiff allegedly reported during a medical intake screening that he had a prescription to take 500 mg of Kepra, an anti-seizure medication, twice a day. Once later that day and twice the next day, he informed various staff members that he would suffer seizures if he did not receive the medication. Indeed, allegedly Plaintiff specifically asked a nurse at evening pill call on April 3 to "contact the provider to verify that he in fact did have a prescription for anti-seizure medication." (Doc. No. 1 at 4.) Based on these allegations, the Court infers that Plaintiff had a diagnosed seizure disorder that mandated treatment when he arrived at TTCC, which qualifies as a serious medical need. *See Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 776 (6th Cir. 2012) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)) ("If a failure to treat a particular condition would deny the inmate 'the minimal civilized measure of life's necessities,' it meets this 'objective' prong.").

Second, Plaintiff alleges that he suffered one or two seizures every day from April 4 through April 13, except for April 8. Plaintiff felt increasing pain in his head and body during this time, urinated on himself, and ultimately experienced impaired memory, decision making, cognitive function, and fine motor skills. The Court concludes that these seizures, and Plaintiff's resulting condition, were also sufficiently serious medical needs that "would alert ordinary people as requiring medical attention." *See Newberry v. Melton*, 726 F. App'x 290, 295 (6th Cir. 2018) (footnote omitted) (finding that a prisoner's seizures satisfied the objective component of a deliberate indifference claim).

As to the subjective component, Plaintiff must "show that [each] defendant ha[d] 'a sufficiently culpable state of mind in denying medical care.'" *Id.* at 294 (quoting *Blackmore*, 390

8

F.3d at 895). To do so, Plaintiff must "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Dominguez*, 555 F.3d at 550 (quoting *Comstock*, 273 F.3d at 703). This standard does not require Plaintiff to "show that the defendant acted with the very purpose of causing harm," but it does require a showing of "something greater than negligence or malpractice." *Winkler v. Madison Cty.*, 893 F.3d 877, 891 (6th Cir. 2018) (citing *Farmer*, 511 U.S. at 835). "[T]he subjective component of a deliberate indifference claim must be addressed for each officer individually." *Id.* (quoting *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 542 (6th Cir. 2008)).

Here, Plaintiff has not satisfied the subjective component of this claim against the six defendants who are at least partially identified—Oshi Medlin, Nurse Practitioner Cobb, and Nurses Clark, Murray, Carter, and Peterson. The same is true of the two unidentified "John Doe Physicians." In the body of the complaint, Plaintiff does not allege any specific unconstitutional conduct by these individuals. Indeed, other than including them in the caption, the list of parties, and the request for relief, Plaintiff does not mention these defendants at all. Even under the liberal construction afforded to *pro se* plaintiffs, a plaintiff "must allege that the defendants were personally involved in the alleged deprivation of federal rights." *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (citations omitted) (affirming dismissal of a *pro se* prisoner's complaint for failure to state a claim where the plaintiff "failed to allege with any degree of specificity which of the named defendants were personally involved in or responsible for each of the alleged violations of his federal rights"); *Winkler*, 893 F.3d at 891 ("[T]he evidence must show that the specific individual was aware of facts from which he or she could infer a substantial risk of serious harm."). Accordingly, Plaintiff fails to state individual-capacity claims against these eight

9

defendants at this juncture. These individual-capacity claims will be dismissed, without prejudice to Plaintiff's ability to allege facts that may satisfy the subjective component of this claim against these defendants in an amended complaint.

By contrast, Plaintiff has satisfied the subjective component of this claim against the four remaining unidentified defendants—"John Doe," "John Doe Nurse," and the two "Jane Doe Nurses." Plaintiff makes specific allegations against several unidentified Trousdale Turner officials in the body of the complaint, including an officer working in his pod and nurses responsible for morning and evening pill call. Construing the allegations in Plaintiff's favor, the Court infers that the pod officer is "John Doe," and that the pill call nurses include "John Doe Nurse" and the two "Jane Doe Nurses."

On April 3, 2018, Plaintiff alleges, he made pod officer John Doe aware of his serious medical need for his anti-seizure medication and expressed concern that he was not receiving it. Thus, Defendant John Doe was "allegedly aware of facts from which the inference of substantial risk of harm could be drawn." *Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005) (citations omitted) (finding a genuine issue of material fact as to whether an unnamed officer was deliberately indifferent to a prisoner's medical need for regular insulin injections where the prisoner "informed the unnamed officer of her condition in detail when he escorted her to her holding cell"). John Doe then allegedly disregarded that risk by refusing Plaintiff's request to contact medical and stating that Plaintiff "did not have a medical emergency." Further, assuming that the same John Doe was Plaintiff's pod officer on April 4 and April 6, he allegedly was deliberately indifferent to Plaintiff's serious medical needs on those days as well. Allegedly, Plaintiff's first alleged seizure was on April 4, and he told the pod officer about it that day. But the officer allegedly refused Plaintiff's request to go to medical. Likewise, on April 6—a day Plaintiff

10

suffered two alleged seizures—Plaintiff allegedly told the pod officer that "he was in pain and both his head and body were hurting." But the officer allegedly again refused Plaintiff's request to go to medical because "it was not considered an emergency." These allegations satisfy the subjective component of this claim against Defendant John Doe.

Plaintiff's claims for deliberate indifference against John Doe Nurse and the two Jane Doe Nurses are based on similar allegations, although these three defendants' alleged misconduct occurred over a longer period of time. As stated above, the Court considers the unidentified pill call nurses to include these three defendants. And Plaintiff specifically alleges that he made pill call nurses aware of his serious medical needs both before his seizures started and during the ten-day seizure period.

During evening pill call on April 2, Plaintiff allegedly told a Jane Doe Nurse that he needed his anti-seizure medication. On April 3, he allegedly described his need for the medication to the morning pill call nurse. He asked the evening pill call nurse to "contact the provider to verify that he in fact did have a prescription for anti-seizure medication." On April 4, Plaintiff allegedly told two morning pill call nurses that he suffered a seizure. On April 6, he allegedly told a nurse that "he was in pain and both his head and body were hurting." On April 10, Plaintiff allegedly told the morning pill call nurse that he had not received his prescribed anti-seizure medication despite following TTCC sick call procedures and requesting it from TTCC staff. That same day, he allegedly explained to a nurse that he was had been taking 500 mg of Kepra twice a day "for a long time," and that the "medication should never have been discontinued." On April 12, Plaintiff allegedly informed a nurse that he urinated on himself.

Throughout this period, Plaintiff alleges, Defendants John Doe Nurse and the two Jane Doe Nurses failed to provide Plaintiff his prescribed anti-seizure medication, ignored Plaintiff's

11

deteriorating condition, and refused Plaintiff's continual requests for medical attention. It was not until April 13—when Plaintiff suffered his fourteenth seizure in ten days—that Plaintiff received his medication. Taking these allegations as true, the Court concludes that Plaintiff satisfied the subjective component of this claim against John Doe Nurse and the two Jane Doe Nurses.

In sum, as the complaint currently stands, Plaintiff has stated a claim for deliberate indifference to his serious medical needs against Defendants John Doe, John Doe Nurse, and the two Jane Doe Nurses in their individual capacities. Plaintiff's individual-capacity claims against the other eight defendants, however, will be dismissed without prejudice to Plaintiff's ability to satisfy the subjective component of this claim against them in an amended complaint.

### 4. Official-Capacity Claims

Plaintiff also states an official-capacity claim against Defendant Oshi Medlin. According to the complaint, Defendant Medlin is the Health Services Administrator at Trousdale Turner. (Doc. No. 1 at 3.) "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Hopper v. Plummer*, 887 F.3d 744, 760 n.4 (6th Cir. 2018) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)). The Court takes judicial notice that CoreCivic is a private entity contracted to manage Trousdale Turner.[3] Thus, Plaintiff's official-capacity claim against Medlin is essentially a claim against CoreCivic.

Because it "performs the traditional state function of operating a prison," CoreCivic "acts under the color of state law for purposes of [Section] 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). But

---

[3] The Court "may take judicial notice of 'a fact that is not subject to reasonable dispute' either because such a fact 'is generally known' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Davis v. City of Clarksville*, 492 F. App'x 572, 578 (6th Cir. 2012) (quoting Fed. R. Evid. 201(b)). The Tennessee Department of Correction website reflects that TTCC is managed by CoreCivic, a private corrections management firm. *Trousdale Turner Correctional Center*, TENNESSEE DEPARTMENT OF CORRECTION, https://www.tn.gov/correction/sp/state-prison-list/trousdale-turner-correctional-center (last visited July 10, 2019).

"private corporations cannot be held liable on the basis of respondeat superior or vicarious liability." *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 453 (6th Cir. 2014) (citing *Street*, 102 F.3d at 818). To state a claim against CoreCivic, Plaintiff must allege that his "'constitutional rights were violated and that a policy or custom' of [CoreCivic] 'was the moving force behind the deprivation of [his] rights." *Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012) (quoting *Miller v. Sanilac Cty.*, 606 F.3d 240, 255 (6th Cir. 2010)).

Here, as stated above, Plaintiff has stated a colorable claim that he suffered violations of his constitutional right to adequate medical care. Liberally construing the complaint in Plaintiff's favor, he also alleges that CoreCivic had a policy or custom that was the moving force behind these violations. Plaintiff alleges that, on April 10, 2018, TTCC medical staff told him he could not be given his medication until TTCC's medical provider completed lab work. By this time, TTCC staff had already denied Plaintiff his prescribed anti-seizure medication for eight days, and Plaintiff had already suffered eight seizures. After this time, Plaintiff suffered another six seizures before finally receiving his medication on April 13. For the purpose of initial review, the Court concludes that CoreCivic's alleged refusal to provide Plaintiff's prescribed anti-seizure medication until completing lab work constitutes a policy or custom that was the moving force behind Plaintiff's constitutionally inadequate medical care. Accordingly, Plaintiff has stated a claim against CoreCivic for deliberate indifference to his serious medical needs, and his official-capacity claim against Defendant Medlin will be referred to the Magistrate Judge for further development.

The Court infers that, like Oshi Medlin, the other eleven defendants were employees of CoreCivic at the time of the allegations. Because CoreCivic remains as a target of this action through Plaintiff's official-capacity claim against Defendant Medlin, Plaintiff's claims against other CoreCivic employees in their official capacities are redundant. *See Von Herbert v. City of St.*

13

*Clair Shores*, 61 F. App'x 133, 140 n.4 (6th Cir. 2003) (finding that a plaintiff's "official-capacity federal claims against [individual defendants] were redundant, because they were subsumed by her [Section] 1983 charge against" their employer). Plaintiff's official-capacity claims against the other eleven defendants will be dismissed.

### III. Appointment of Counsel

Plaintiff filed a Motion for Appointment of Counsel (Doc. No. 2 at 1–2) and the following supporting documentation: a memorandum of law (*id.* at 3–5); an affidavit (Doc. No. 3); his own declaration (Doc. No. 4); and the declaration of inmate legal aid Craig Quevedo (Doc. No. 5). Plaintiff argues that he cannot afford counsel, has no legal training, and has "extremely limited" access to legal materials. (Doc. No. 2 at 2.) According to his affidavit, he attempted to obtain representation from two attorneys in July 2018 but did not receive a response, and he does not have any income. (Doc. No. 3 at 2–3.) In Plaintiff's declaration, he states that he is "functionally illiterate," and that an inmate legal aid helped him prepare and submit this action and his declaration. (Doc. No. 4 at 1.) Quevedo's declaration provides more detail, specifically stating that Plaintiff lacks "basic reading and writing skills," and that any further assistance for Plaintiff would be "dependent upon work load and [] availability" because there are 256 inmates in Quevedo's unit and his "primary focus is on cases that are in criminal court." (Doc. No. 5 at 1.)

"A district court has discretion to appoint counsel for an indigent civil litigant" under 28 U.S.C. § 1915(e)(1). *Richmond v. Settles*, 450 F. App'x 448, 452 (6th Cir. 2011) (citing *Reneer v. Sewell*, 975 F.2d 258, 261 (6th Cir. 1992)). "The appointment of counsel in a civil proceeding," however, "is not a constitutional right and is justified only in exceptional circumstances." *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003) (citing *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993)). "To determine whether these exceptional circumstances exist, courts typically

consider 'the type of case and the ability of the plaintiff to represent himself.'" *Id.* (citations omitted). "This generally involves a determination of the complexity of the factual and legal issues involved." *Richmond*, 450 F. App'x at 452 (quoting *Lavado*, 992 F.2d at 606) (internal quotation marks omitted).

Here, the Court concludes that Plaintiff is indigent, and that this case presents extraordinary circumstances warranting the appointment of counsel for at least four reasons. First, Plaintiff's ability to represent himself is extremely limited, if not completely foreclosed, by his lack of basic reading and writing skills. Second, Plaintiff will likely require assistance to identify the four defendants with individual-capacity claims remaining against them at this time, and to obtain and understand his institutional medical records. Third, this matter presents legally complex issues, including the statute-of-limitations issue identified above and the unique legal standards involved in litigating a Section 1983 claim against a private entity like CoreCivic. And fourth, the alleged constitutional violations and Plaintiff's resulting injuries are severe. For all of these reasons, the Court will exercise its discretion to appoint counsel in this case.

## IV. Conclusion

Plaintiff's application to proceed *in forma pauperis* (Doc. No. 8) and his motion to appoint counsel (Doc. No. 2) will be granted. His individual-capacity deliberate indifference claims against Defendants John Doe, John Doe Nurse, and the two Jane Doe Nurses, as well as his official-capacity deliberate indifference claim against Defendant Oshi Medlin, will be referred to the Magistrate Judge for further proceedings consistent with the accompanying Order.

The Clerk will be directed to appoint counsel for Plaintiff from the civil appointment panel. And Plaintiff, through counsel, will be directed file an amended complaint within a reasonable time according to a schedule to be set by the Magistrate Judge.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE